FILED IN
COURT OF CRIMINAL APPEALS

April 16, 2015

ABEL ACOSTA, CLERK

PD-00013-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/16/2015 11:34:18 AM
Accepted 4/16/2015 11:42:02 AM
ABEL ACOSTA
CLERK

PD-0013-15
PD-0015-15

# IN THE COURT OF CRIMINAL APPEALS

## AUSTIN, TEXAS

_____

### THE STATE OF TEXAS,
Appellant

vs.

### MICHAEL ERIC RENDON,
Appellee

_____

## ON PETITIONS FOR DISCRETIONARY REVIEW FROM THE COURT OF APPEALS, THIRTEENTH DISTRICT OF TEXAS CORPUS CHRISTI
## CAUSE NUMBERS 13-13-00665-CR & 13-13-00666-CR

_____

## BRIEF FOR THE APPELLEE
## MICHAEL ERIC RENDON

_____

EDWARD F. SHAUGHNESSY, III
ATTORNEY-AT-LAW
206 E. LOCUST
SAN ANTONIO, TEXAS 78212
(210) 212-6700
(210) 212-2178 (fax)
SBN 18134500
Shaughnessy727@gmail.com


ATTORNEY FOR THE APPELLEE

# TABLE OF CONTENTS

PAGE(S)

Table of Contents ................................................................................. i

Table of Interested Parties ................................................................... ii

Table of Authorities ............................................................................. iii

Brief for the Appellee .......................................................................... 4

Response to the Appellant's Ground for Review .................................. 6

Conclusion and Prayer .......................................................................... 16

Certificate of Service ........................................................................... 17

Certificate of Compliance .................................................................... 17

## TABLE OF INTERESTED PARTIES

Mr. James P. Dickens
Assistant Criminal District Attorney
205 N. Bridge Street
Suite 301
Victoria, Texas 77901

State's Trial Counsel

Mr. Edward A. Bartolomei
Attorney at Law
420 Baltimore
San Antonio, Texas 78215

Trial Counsel

Honorable Robert Cheshire
Judge Presiding
377th Judicial District Court
Victoria County, Texas

Trial Court Judge

Edward F. Shaughnessy, III
Attorney at Law
206 E. Locust Street
San Antonio, Texas 78212
(210) 212-6700
Bar No: 18134500

Appellee's Counsel

Mr. Brendan W. Guy
Assistant Criminal District Attorney
205 N. Bridge Street
Suite 301
Victoria, Texas 77901

Appellant's Counsel

# TABLE OF AUTHORITIES

PAGE(S)

## UNITED STATES SUPREME COURT CASE(S)

*California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 80 L.Ed2d 210 (1986)*.........12

*Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)*......13

*United States v. Dunn, 480 U.S. 294, 107 S.Ct. 11134, 94 L.Ed.2d 326 (1987)*.....13

## FEDERAL CASE(S)

*United States v. Gutierrez, 760 F.3d 750 (7ᵗʰ Cir. 2014)*........................................15

## STATE CASE(S)

*Arguellez v. State, 409 S.W.3d 657 (Tex. Crim. App. 2013)*..................................11

*Bower v. State, 769 S.W.2d 887 (Tex. Crim. App. 1989), cert. den. 492 U.S. 927 (1989)*..........................................................................................................................13

*Crain v. State, 315 S.W.3d 43 (Tex. Crim. App. 2010)*....................................10,11

*Gonzalez v. State, 588 S.W.2d 355 (Tex. Crim. App. 1979)*.................................12

*Pecina v. State, 361 S.W.3d 68 (Tex. Crim. App. 2012)*.........................................12

*Sayers v. State, 433 S.W.3d 667 (Tex. App.-Houston [1ˢᵗ Dist.], 2014)*................15

## OUT-OF-STATE CASES(S)

*Florida v. Jardines, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013)*.......14,15

*People v. Burns, 25 N.E.3d 1244 (Ill. App. Ct. 2015)*........................15

*Perez v. Indiana, ____ NE.3d____ (No. 20A03-1407-CR-236, March 11, 2015, 2015 WL 1068994)*...........................15

| | | |
|---|---|---|
| THE STATE OF TEXAS,<br>Appellant | § | IN THE COURT OF |
| | § | |
| | | CRIMINAL APPEALS |
| v. | § | |
| | | |
| MICHAEL ERIC RENDON,<br>Appellee | § | AUSTIN, TEXAS |

BRIEF FOR THE APPELLEE
MICHAEL ERIC RENDON

To the Honorable Court of Criminal Appeals:

Now comes, Michael Eric Rendon, by and through Edward F. Shaughnessy, III, attorney for the appellee and files this brief in cause numbers PD-0013-15 and PD-0015-15. The appellant was indicted by a Victoria County grand jury for the offenses of Money Laundering and Possession of Marijuana (Four ounces to Five Pounds) in cause numbers 12-8-26806-D and 12-8-26805-D. Prior to trial, the appellee filed a motion to suppress evidence. A hearing was conducted on that motion and at the conclusion thereof the trial Court granted the appellee's motion. Notice of appeal was filed by the State of Texas and an appeal, alleging four points of error, followed. On December 4, 2014 the Court of Appeals, Thirteenth District of Texas affirmed the order of the lower Court in a published opinion authored by Benavides. *Rendon v. State (Tex. App.-Corpus Christi, No. 13-13-00665-CR & 13-`2-00666-CR, December 4, 2014, 2014 WL*

4

*6881630)[1]* The State of Texas, subsequently filed a Petition for Discretionary Review with this Court. This Court granted that petition on February 4, 2014. The State of Texas has filed its brief with this Court. The appellant asserts that the opinion of the lower decided an important question of State and Federal law that has not been but should be decided by this Court.

---

[1] The opinion of the Court of Appeals treated the appellant's four allegations of error as a single point of error, that being whether the trial Court erred in granting the appellee's motion to suppress.

[2] It is the appellee's position that the order of the trial Court should be upheld under any standard of review this Court finds applicable to the issue presented.

## APPELLEE'S RESPONSE TO APPELLANT'S GROUND FOR REVIEW

The State's sole ground for review, when distilled to its essence, asserts that the trial Court erred in granting the appellee's motion to suppress because appellee's rights under the Fourth Amendment were not violated. In support of that allegation the State argues that the lower Court utilized an inappropriate standard of review, resulting in a legal conclusion as to what constituted the "curtilage" of the appellee's residence for purposes of deciding whether the area searched was within that "curtilage" for purposes of protection under the Fourth Amendment.

## STATEMENT OF APPLICABLE FACTS

The trial Court conducted an evidentiary hearing on the appellee's motion to suppress which featured the testimony of a single police officer, along with the nest-door neighbor of the appellee's. In addition, the contested search warrant and the accompanying affidavit were admitted along with photographs depicting the exterior of the appellee's apartment. The facts pertinent to the issue before this court relate to only a portion of those presented to the trial Court: those relating to what the trial Court and the Court of Appeals found to constitute "curtilage" of the appellee's apartment for purposes of ascertaining whether law enforcement improperly entered within that zone of privacy and as a result illegally obtained incriminatory facts utilized in the obtaining the subsequent

6

search warrant that was the subject of the appellee's claim that the search was conducted in violation of the Fourth Amendment to the United States Constitution, and Art. I, §§ 9, 10, 19 Tex. Const.

Those facts are detailed in the opinion of the lower Court in the following fashion:

> On May 8, 2012 Victoria, Texas police officers conducted a drug investigation at an apartment complex located on Bingham Street following a confidential informant's tip. The police's target suspect was Rendon, who was a resident of the apartment complex. Victoria Police Detective Jason Stover and his police-trained dog, Baco, assisted other officers in the investigation.
>
> Detective Stover testified that Baco initially conducted a warrantless "open air sniff' of the exterior of Rendon's parked vehicle, which was located in the apartment complex's parking lot. Following the sniff, Baco exhibited a "positive alert to the presence of narcotics." At that point, other Victoria police officers approached Rendon's apartment, but Rendon exited his apartment and greeted the officers before they were able to knock on the apartment door.
>
> The other officers spoke to Rendon outside of his apartment, and the officers later advised Detective Stover "by radio" to approach Rendon's residence with Baco. Detective Stover and Baco arrived at Rendon's apartment door, and Baco again conducted a warrantless sniff of the apartment's door and "alerted [Detective Stover] to the odor of illegal narcotics." After the positive alert, Detective Stover returned Baco to his police unit and joined the other officers outside of Rendon's apartment. Police officers then requested Rendon's consent to search his apartment, but Rendon declined. Detective Stover testified that because Rendon declined consent to search his apartment, he applied for a search warrant of Rendon's apartment and vehicle.

7

> In his search warrant affidavit, Detective Stover noted Baco's "positive" alerts to the odor of narcotics from the "open-air sniff" outside of Rendon's vehicle, as well as after sniffing the "bottom left portion" of Rendon's apartment door. Detective Stover's application for search warrant was granted by a magistrate and executed the same day.
> *Rendon v. State, supra at slip op. pgs 2, 3.*

The opinion of the Court below also detailed the physical characteristics of the apartment, which was the focus of the contested issue. The Court described that apartment in the following terms:

> The record establishes that the rectangular building holds four separate apartment units over two floors. The first two units are located on the ground floor, and the remaining two units are located on the second floor. A straight continuous staircase leads visitors and residents to the second floor. At the stairway's landing the path splits left and right. Each second floor apartment has a patio area immediately in front of its doorway. Rendon's apartment was located on the left side of the second floor.
> *Rendon v. State, supra at slip n.2.*

At the conclusion of the evidentiary hearing the trial court entered findings of fact and conclusions of law. The court made a factual finding that the sniff search by Baco the drug dog was a warrantless search of the curtilage of the appellee's apartment and as a consequence the subsequent search warrant relied upon illegally obtained evidence. Subsequently, the appellee's motion to suppress was granted. As noted above the State of Texas appealed that ruling by the trial Court, asserting among other things that the trial Court had erred in granting the appellee's motion because the area of the premises that was the

8

subject of Baco's sniff search was not part of the curtilage of the appellee's apartment.

The lower Court rejected the argument advanced by the appellant regarding the issue of whether Baco's warrantless sniff search was in fact within the protected "curtilage" of the appellee's residence. The court reasoned as follows:

> Rendon argues that this sniff search occurred in the curtilage of his apartment, and was, thus, unreasonable under *Jardines* and the Fourth Amendment. The State argues that because Baco's sniff occurred in the passageway leading up to Rendon's apartment it was a "common area" of the apartment complex, and not protected by the Fourth Amendment. We agree with Rendon.
> *********************
> Based on this, record we conclude that the area immediately in front of Rendon's apartment is no different from the front porch of a free-standing home. Thus, bringing a trained police dog to sniff the bottom left portion of the Rendon's apartment door in hopes of discovering incriminating evidence exceeded the scope of any express or implied license allowed under the Fourth amendment.
> *Rendon v. State, supra at slip op. pgs 7, 8.*

The State of Texas asserts that the holding of the Thirteenth Court has decided and important question of State and Federal law which has not been, but should be, decided by this Court. The appellee does not disagree with the broad characterization of the issue in question when considered in the context of whether this unique fact scenario has ever been presented to this Court for a determination of whether the area searched was within the protected "curtilage"

9

of a particular residence. The appellee would submit that in the context of the facts presented herein the holding of the lower Court is wholly consistent with the holdings of the United States Supreme Court and this Court regarding what constitutes "curtilage" for purposes of protection under the Fourth Amendment. As a result, the holding of the Court below along with the ruling of the trial court should be upheld in all respects.

## ISSUES BEFORE THE COURT

The issue that presents itself to this Court appears to whether or not the Baco "air sniff" was conducted within an area that constitutes the "curtilage" of the appellee's residence. Also before the Court is the issue as to whether the lower Court utilized the correct standard of review in answering the ultimate issue in favor of the appellee. The appellee will initially address the question of what standard of review should be applied to the ruling of the trial Court.[2]

## STANDARD OF REVIEW

The opinion of the lower Court appears to have considered the matter before it as one involving a bifurcated standard of review. This Court has defined the bifurcated standard of review to be utilized by reviewing court's when passing on the propriety of a trial ruling on a motion to suppress. See: *Crain v. State, 315 S.W.3d 43 (Tex. Crim. App. 2010).* A ruling by a trial court

---

[2] It is the appellee's position that the order of the trial Court should be upheld under any standard of review this Court finds applicable to the issue presented.

on a motion to suppress evidence is reviewed by an appellate court for abuse of discretion, with almost complete deference to be given to the trial court's determination of historical facts, especially if those determinations are founded upon an assessment of witness credibility. *Crain v. State, supra.* The same deference is afforded to the trial court regarding its rulings on the application of the law to questions of fact and to mixed questions of law and fact, if resolution of those issues requires an evaluation of the credibility of the witnesses. *Crain v. State, supra.* Mixed questions of law and fact that do not require determinations of credibility of the witnesses are subject to *de novo* review. *Crain v. State, supra.* In the absence of express factual findings from the trial court, a reviewing court must view the evidence in a light most favorable to the ruling of the trial court, and engage in a presumption that the trial court made implied findings that are supported by the record. *Arguellez v. State, 409 S.W.3d 657 (Tex. Crim. App. 2013).* *De novo* review is employed when a reviewing court is called upon to review rulings of a trial court that are questions of law and mixed questions of law that are not dependent upon determinations of credibility on the part of the witnesses. *Pecina v. State, 361 S.W.3d 68 (Tex. Crim. App. 2012).*

APPLICATION OF STANDARD OF REVIEW

In the instant case the issue presented to the trial question was not a "pure" question of law. [3] That issue would be whether "curtilage" enjoys any protections under the Fourth Amendment. That argument was not raised in the trial Court or the Court of Appeals and is not raised before this Court. As a result *de novo* review is not required on the theory that this Court is presented with a "pure" question of law. On the other extreme this was not a dispute in the trial court, which was wholly factual in nature. That scenario would have involved a dispute as to how the search was conducted. Such as a dispute as to whether consent was given, whether the appellee had standing in the premises searched or possibly whether the search was conducted pursuant to a search or arrest warrant. It would appear that the instant case involves a mixed question of fact and law that turns to a small degree on witness credibility. The question of law appears to be what constitutes the "curtilage" of an apartment. The question of fact being, was Baco's "open-air sniff" within that protected area. The Court of Appeals apparently viewed the standard to be applied as one involving giving almost total deference to the historical facts found by the trial Court, yet reviewing the application of those facts to the law in a *de novo* fashion.

The appellee would submit that the Court below properly determined the appropriate standard of review. Hence this court should give almost total

---

[3] The Supreme Court has definitively answered the question as to whether or not the "curtilage" of a given premises is given protection under the Fourth Amendment in the affirmative. See: California v. Ciraolo, 476 U.S. 207, !06 S.Ct. 1809, 80 L.Ed2d 210 (1986). This Court has reached a similar conclusion. Gonzalez v. State, 588 S.W.2d 355 (Tex. Crim. App. 1979).

deference to the finding of the trial court as to where Baco was when he conducted his "open-air sniff" (warrantless search) and then review, in a *de novo* fashion, the conclusion of the trial Court that the "open-air sniff" was conducted within the "curtilage" of the appellee's apartment. With these precepts of appellate review taken into consideration, the issue appears to have been distilled to a question of whether the door frame/threshold to the appellee's apartment was within the constitutionally protected "curtilage" of the appellee's residence.

CURTILAGE

The Supreme Court of the United States has defined the boundaries of constitutionally protected "curtilage" as the area around the home to which the activity of home life extends. *Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).* See: *Bower v. State, 769 S.W.2d 887 (Tex. Crim. App. 1989), cert. den. 492 U.S. 927 (1989).* The factors to be considered in ascertaining whether or not a given area falls within that definition include the following: 1) the proximity of the area claimed to curtilage to the residence, 2) whether or not the contested area is included within an enclosure surrounding the residence, 3) the nature of the uses to which the contested area is utilized, and 4) the steps taken by the occupant to minimize the possibility of outside observation. *United States v. Dunn, 480 U.S. 294, 107 S.Ct. 11134, 94 L.Ed.2d 326 (1987).* The ultimate issue, in deciding whether the contested area is to be

13

treated as "curtilage" of the residence, is whether the contested area is so immediately tied to the residence itself that it should be placed under the residence's "umbrella" of protection as guaranteed by the Fourth Amendment. *United State v. Dunn, supra.*

The most recent application of these principles relating to the issue of "curtilage" and the boundaries of protection under the Fourth Amendment is the opinion of the United States Supreme Court in *Florida v. Jardines, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013).*

In *Jardines,* a detective, a canine officer and the officer's drug sniffing dog walked up to the front door of the defendant's home. The officers did not possess a search warrant. While at the front of the door the drug dog alerted for the presence of illegal substances. Based upon that alert the officers sought and obtained a search warrant for the interior of the residence. After executing the warrant the officers found and seized marijuana at the location. The Florida courts suppressed the marijuana on the grounds of a Fourth Amendment violation. On *certiorari* the United States Supreme Court affirmed the decision of the Florida court.

The *Jardines* court noted that "when it comes to the Fourth Amendment, the home is the first among equals" and "at the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " *Jardines, id. at S.Ct. 1414.* The Court noted that the curtilage of the residence (the area immediately surrounding and

associated with the home) is treated as part of the residence itself for purposes of an analysis under the Fourth Amendment. *Jardines, id. at S.Ct. 1414.*

The facts underlying the instant prosecution, do not differ in any significant fashion from those that were presented in *Jardines.* That was the conclusion of the lower Court when it concluded "police conducted an unreasonable search by using a trained police dog to investigate the curtilage of Rendon's apartment." *Rendon v. State, supra, slip op, at pg 9.* A *de novo* review of that question of law by this Court is wholly consistent with holding in *Jardines.* Compare: *United States v. Gutierrez, 760 F.3d 750 (7th Cir. 2014); People v. Burns, 25 N.E.3d 1244 (Ill. App. Ct. 2015); Perez v. Indiana, ____ NE.3d____ (No. 20A03-1407-CR-236, March 11, 2015, 2015 WL 1068994).* See also: *Sayers v. State, 433 S.W.3d 667 (Tex. App.-Houston [1st Dist.], 2014).*

The appellant's sole ground for review is without merit and should be overruled, and the holding of the Court below should be affirmed in all respects.

## CONCLUSION AND PRAYER

Wherefore premises considered the appellee, Michael Eric Rendon, would respectfully request that this Court affirm the judgment of the Thirteenth Court of Appeals and the judgment of the trial court in all respects.

Respectfully submitted,

___/s/*Edward F. Shaughnessy, III*___

Edward F. Shaughnessy, III
Attorney at Law
206 E. Locust
San Antonio, Texas 78212
(210) 212-6700
(210) 212-2178 (fax)
SBN 18134500
Shaughnessy727@gmail.com

Attorney for the appellee
Michael Eric Rendon

## CERTIFICATE OF SERVICE

I, Edward F. Shaughnessy, III, attorney for the appellee hereby certify that a true and correct copy of the instant brief was delivered to Brendan W. Guy, attorney for the appellant, by use of the U.S. Mail, at 205 N. Bridge Street, Suite 301, Victoria, Texas, 77901, counsel for the appellant, on the _16__ day of April, 2015.


_____/s/Edward F. Shaughnessy, III____

Edward F. Shaughnessy, III




## CERTIFIVATE OF COMPLIANCE

I, Edward F. Shaughnessy, III, attorney for the appellee, hereby certify that the instant document contains 3370 words.


___/s/Edward F. Shaughnessy, III____

Edward F. Shaughnessy. III