In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-1788

UNITED STATES OF AMERICA,

*Plaintiff-Appellee.*

*v.*

CHARLES GARY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 09 CR 50041-7—**Frederick J. Kapala**, *Judge.*

ARGUED DECEMBER 3, 2014 — DECIDED JUNE 19, 2015

Before MANION, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant Charles Gary appeals
from his conviction for conspiracy to distribute heroin after a
jury trial. He appeals, challenging only the district court's
denial of a motion to suppress evidence obtained as a result
of his arrest. Gary argues that he was seized without prob-
able cause following a traffic stop and that the cell phone
and drug evidence obtained as a result of his arrest was ob-
tained unlawfully. He also argues that even if the arrest was
valid, the search of his cell phone exceeded the scope of a
lawful search incident to arrest. For both reasons, Gary ar-

gues, the district court should have suppressed evidence linking a cell phone he was carrying at the time of arrest to a drug-trafficking organization.

We affirm the district court's decision to deny the motion to suppress. The police had probable cause to arrest Gary. An undercover agent saw Gary talking on the phone in the passenger seat of a car when the agent bought heroin from the driver of the car. The driver made no attempt to conceal the drug transaction from Gary. For purposes of probable cause (quite apart from guilt or innocence), the agent could reasonably infer from the circumstances that Gary was probably involved in a common and unlawful drug enterprise with the driver.

We also hold that the evidence obtained from the search of Gary's cell phone after his arrest should not be excluded. The Supreme Court ruled in 2014 that the warrantless search of a cell phone is not a permissible search incident to arrest. *Riley v. California*, 134 S. Ct. 2473, 2495. But the search of Gary's phone took place five years earlier, in 2009. In 2009, the cell phone search was lawful under binding circuit precedent that allowed the search of personal effects immediately associated with an arrestee even if the search was not contemporaneous with the arrest. Because the officer who conducted the search complied with then-binding precedent, the evidence obtained from the search should not be excluded because the search was conducted with the objectively reasonable good-faith belief that it was lawful. See *Davis v. United States*, 564 U.S. —, 131 S. Ct. 2419, 2428–29 (2011).

I.  *Gary's Arrest*

Gary first argues that the district court erred in finding that there was probable cause for his arrest following a traffic stop. The relevant facts are not in dispute. We review *de novo* questions of law presented by a district court's decision on a motion to suppress. *United States v. Nicksion*, 628 F.3d 368, 376 (7th Cir. 2010).

Gary was seized by two officers following a traffic stop of a car in which Gary was a passenger. The officers stopped the car because a narcotics detective gave them the license plate number and told them to make a stop if they observed any violations. During the stop, the officers discovered heroin on the driver of the car during a frisk for weapons. Gary was also patted down. One of the officers making the traffic stop spoke with Gary's parole officer, who asked to see Gary. The police officer at the scene then handcuffed Gary and searched him—turning up two cell phones, one black and one blue. Gary was placed in the back of the squad car and transported to the police station. The arresting officer admitted that the sole reason he seized Gary was to bring him to speak with his parole officer at the police station. The government concedes that this seizure of Gary amounted to an arrest.

Gary argues that the police did not have probable cause to seize him for two reasons. First, the arresting officer admitted that the sole reason he was seized was to bring him to speak with his parole officer. Second, he argues, his mere presence in the car with a driver who was observed selling drugs was not enough to find probable cause.

The district court was correct to find that this seizure was a lawful arrest. The district court rightly dismissed Gary's argument that the arrest lacked probable cause because the arresting officer stated that he seized Gary to bring him to speak with his parole officer. As the district court recognized, the arresting officer's subjective justification is irrelevant as long as there was objective probable cause for the arrest. *United States v. Mosby*, 541 F.3d 764, 768 (7th Cir. 2008), citing *Whren v. United States*, 517 U.S. 806, 812–13 (1996).

Evaluating objectively the facts and circumstances known to the police at the time of the arrest, we agree there was probable cause to believe that Gary was committing a crime. The facts supporting probable cause came from events earlier that day when narcotics detectives were investigating the Hollis Daniels drug-trafficking organization. The officers who pulled over the car had no personal knowledge of that investigation. They stopped the vehicle at the direction of a narcotics detective. But knowledge of the investigation can be imputed to the arresting officers through the collective knowledge doctrine, under which the court will consider the information known to the officers collectively to determine if there was probable cause for the arrest. See *United States v. Nafzger*, 974 F.2d 906, 912–13 (7th Cir. 1992) (officer who was told the defendant was a suspect could rely on collective knowledge of investigative team to supply facts supporting reasonable suspicion for stop); *United States v. Randall*, 947 F.2d 1314, 1319 (1991) ("The police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works

for, is sufficient to constitute probable cause."), quoting *United States v. Valencia*, 913 F.2d 378, 382–83 (7th Cir. 1990) (internal quotation marks omitted).

The morning of Gary's arrest, a narcotics detective working undercover called a phone number known as the Hollis Daniels drug line to order heroin. The person who answered the phone told the detective to go to the area of Bruce Street and Ridge Avenue. The detective rode a bicycle to that location and saw a blue Buick pull up with two men inside. The driver motioned to him to come over. The detective handed the driver $200 and said he needed "twenty," meaning twenty ten-dollar bags of heroin. The driver made no effort to conceal his words from Gary, the passenger, who was talking intermittently on a cell phone. The driver gave the detective two ten-dollar bags of heroin and motioned him to follow the car around the corner. The detective followed, but the Buick drove away. The detective was in contact with other officers conducting surveillance and relayed a description of the blue Buick.

The detective called the drug line again after the Buick drove away. The person who answered said that there were "undercovers" around and told the detective to go to the area of Main Street and John Street. The detective went to that location but no one was there to meet him. The detective kept calling the drug line but the person who answered kept putting him off, saying for example "we were out of town or we were here, we were there." At one point, the person told the detective that "we're getting our stuff together," meaning they were preparing an order of heroin.

These facts support a finding of probable cause. Gary was a passenger sitting right next to the driver when the

driver sold the detective heroin without any attempt to conceal the transaction. In such close quarters, it was reasonable to infer that Gary and the driver were probably engaged in a common enterprise. The police here relied on more than the "mere propinquity to others independently suspected of criminal activity." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979), citing *Sibron v. New York*, 392 U.S. 40, 62–63 (1968).

A passenger in a car "will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or evidence of their wrongdoing." *Maryland v. Pringle*, 540 U.S. 366, 373 (2003) (finding probable cause for the arrest of the front-seat passenger in a car with drugs and cash hidden throughout the passenger compartment), quoting *Wyoming v. Houghton*, 526 U.S. 295, 304–05 (1999) (internal quotation marks omitted). This is particularly true when the driver is engaged in drug dealing, "an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Id*.

Given the reasonable inference that Gary was engaged in a common and unlawful enterprise with the driver, he was not arrested due to his mere presence in the car. Cf. *United States v. Di Re*, 332 U.S. 581, 593 (1948) (no probable cause to arrest passenger due solely to presence in a car with another person independently suspected of a crime). In contrast to *Di Re*, where the passenger would not necessarily have known about the illegal nature of the contraband the driver was selling (counterfeit ration coupons) and had not been present when the driver sold the contraband, the illegality of the driver's conduct here was apparent. The sale of heroin is unmistakably illegal, and Gary was very close by when the

driver sold heroin to an undercover agent. It is hard to imagine that the driver would have made no attempt to hide this from Gary unless he was involved in the drug-dealing enterprise.

In addition, the person who answered the drug line repeatedly used the pronoun "we," implying that one or more other persons were involved. That provided an additional indication that Gary could be the person answering the drug line when he was seen talking on the phone in the passenger seat while the driver sold the heroin. There could have been innocent explanations for Gary's phone use, of course, but the inference of the criminal activity was reasonable for purposes of probable cause. See *United States v. Funches*, 327 F.3d 582, 587 (7th Cir. 2003) (finding probable cause where "the inference of illegal conduct by trained and experienced officers is at least as probable as any innocent inference"). The district court correctly denied Gary's motion to quash the arrest.

II. *Search of the Cell Phone*

Gary also challenges the warrantless search of his cell phone after he was arrested. He was brought to the police station only to speak to his parole officer, but drugs fell from his pants as he was walking through the station. He was then formally arrested and placed in a holding cell. The two cell phones found in his pocket in the initial arrest were then placed on a table outside the cell. Sometime later that day, a detective involved in the Hollis Daniels investigation picked up the phones and started pushing buttons. He quickly discovered that one of the phones—the black phone—was assigned to the drug line number that the undercover detective had called that morning to order heroin. He also verified

that the phone's log of received calls contained the detective's cell phone number.

Gary argues that this warrantless search of the cell phones violated his Fourth Amendment rights so that the evidence linking the phone to the drug line must be suppressed as the fruit of the unlawful search. Gary cites the Supreme Court's recent decision in *Riley v. California*, 134 S. Ct. 2473 (2014), which held that the police must generally get a warrant before searching a cell phone seized incident to an arrest.

After *Riley*, the search of Gary's phone can no longer be upheld as a lawful search incident to arrest. The Court was unequivocal in announcing its new rule: "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Id.* at 2495. Though the search took place before *Riley* was decided, we apply the new constitutional rule announced in *Riley* because this is the direct appeal of a criminal conviction. See *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). Applying *Riley*, the warrantless search of the cell phone cannot be justified as a search incident to arrest and therefore violated the Fourth Amendment absent some other justification for the search.[1]

This conclusion does not require, however, that we reverse the district court and order the evidence suppressed. The Supreme Court has held that unlawfully obtained evi-

---

[1] In the district court, the government argued the search of the cell phone was justified by exigent circumstances, but that justification for the search was not pressed on appeal.

dence should not be suppressed "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." *Davis v. United States*, 131 S. Ct. 2419, 2427 (2011), quoting *United States v. Leon*, 468 U.S. 897, 909 (1984). *Davis* explained: "Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield meaningfu[l] deterrence, and culpable enough to be 'worth the price paid by the justice system.'" *Id*. at 2428 (alteration in original), quoting *United States v. Herring*, 555 U.S. 135, 144 (2009). *Davis* held that when "binding appellate precedent specifically *authorizes* a particular police practice," officers should use that tool without facing later suppression of evidence if that precedent is later overruled by the Supreme Court. *Id*. at 2429.

Under *Leon* and *Davis*, evidence obtained from an unlawful search is not always excluded. The evidence can still be used against a defendant in a criminal trial if the search was lawful under binding appellate precedent at the time of the search. *Id*. at 2429 ("An officer who conducts a search in reliance on binding appellate precedent does no more than ac[t] as a reasonable officer would and should act under the circumstances.") (alteration in original), quoting *Leon*, 468 U.S. at 920 (internal quotation marks omitted).

The government argues that the evidence from Gary's cell phone should not be excluded because the search, which took place on May 14, 2009, was a lawful search incident to arrest under then-binding appellate precedent. We agree that the search of Gary's cell phone was conducted in objectively reasonable good faith because the search was authorized under our precedent at the time of the search.

As of 2009, the Supreme Court had long recognized a categorical rule allowing the police to conduct a search of a person incident to a lawful arrest. The Court acknowledged two primary functions of a search incident to arrest: first, removing weapons to protect the officers making the arrest, and second, seizing evidence to prevent the arrestee from concealing or destroying it. *United States v. Robinson*, 414 U.S. 218, 251 (1973), citing *Chimel v. California*, 395 U.S. 752, 763 (1969). The Court expressly rejected the need for "case-by-case adjudication" to determine if a particular search served those functions and instead held without qualification that a search of an arrestee's person was *per se* reasonable under the Fourth Amendment. *Id*. at 235. The Court held:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

*Id*.

This rule extends to personal effects found on the arrestee's person at the time of arrest. *Robinson* itself upheld not only the search of the arrestee's body incident to the arrest but also the search of a crumpled cigarette package found in the arrestee's pocket that revealed heroin capsules that were seized as evidence. *Id*. at 236. And *United States v.*

*Edwards*, 415 U.S. 800 (1974), found lawful the search of an arrestee's clothes taken from him while he was in custody and the seizure of incriminating evidence that was found. The Court held the clothes were plainly searchable incident to the arrest: "This was no more than taking from respondent the effects in his immediate possession that constituted evidence of crime. This was and is a normal incident of a custodial arrest … ." *Id*. at 805.

Gary objects that the cell phone found in his pocket is a type of personal effect different from the cigarette package or clothes. Quoting extensively from the Supreme Court's reasoning in *Riley*, 134 S. Ct. at 2488–90, Gary argues that a cell phone cannot be searched without a warrant incident to arrest because it can contain vast amounts of private information. But even the *Riley* Court recognized that its holding—excepting cell phones from *Robinson*'s categorical rule allowing searches of a person (and effects in their immediate possession) incident to arrest given the unique privacy concerns posed by digital data—was a novel approach. The Court acknowledged that "a mechanical application of *Robinson* might well support the warrantless searches at issue here." 134 S. Ct. at 2484.

And as of 2009, without the benefit of *Riley*, this court had refused to differentiate between physical items and digital data in searches incident to arrest. *United States v. Ortiz*, 84 F.3d 977, 984 (7th Cir. 1996). The facts of *Ortiz* are remarkably similar to those found here. An electronic pager was searched to discover precisely the same limited information sought by the police in this case—recent history of received calls to confirm the identity of the phone and the phone number assigned to it. In *Ortiz*, the police called a pager

number that a cooperator said belonged to his heroin sup-
plier (who was later identified as Ortiz). The cooperator ar-
ranged a meeting with Ortiz. When Ortiz arrived, the police
arrested him. The police seized an electronic pager found on
Ortiz during a search. While still at the scene of the arrest, an
officer pushed a button on the pager that revealed previous-
ly transmitted numeric messages. One of those messages
showed the phone number from which the police had called
earlier that day. *Id*. at 982–83. We affirmed the denial of
Ortiz's motion to suppress that evidence because we con-
cluded the "the information from the pager was admissible
because the officers conducted the search of its contents in-
cident to the arrest." *Id*. at 984. The force of *Ortiz* was strong
enough that we applied it in 2012 to uphold a warrantless
search of a cell phone to identify its number. *United States v.
Flores-Lopez*, 670 F.3d 803 (7th Cir. 2012). That decision was
issued after the search in this case but before the Supreme
Court decided *Riley*, and it was a strong indication that the
police could rely on *Ortiz* as binding circuit precedent to
search Gary's cell phones incident to his arrest.

Gary argues that *Ortiz* is distinguishable because the
search there was conducted at the scene of and immediately
after the arrest, whereas Gary's phone was searched some-
time later that day when the phone was left on a table by his
cell at the police station. Gary's argument is undermined by
*Edwards*, which held that the search of the arrestee's clothes
was lawful even though it was not contemporaneous with
the arrest: "Indeed, it is difficult to perceive what is unrea-
sonable about the police's examining and holding as evi-
dence those personal effects of the accused that they already
have in their lawful custody as the result of a lawful arrest."
415 U.S. at 806. The Court explained that most courts of ap-

peals had "long since concluded" that it is a lawful search "where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail, and at a later time searched and taken for use at the subsequent criminal trial." *Id*. at 807.

It is true that *Ortiz* considered the immediacy of the search in upholding it as incident to the arrest. 84 F.3d at 984. But *Ortiz* referred to immediacy only to distinguish *United States v. Chadwick*, 433 U.S. 1 (1977), abrogated on other grounds by *California v. Acevedo*, 500 U.S. 565 (1991). In *Chadwick*, the Court held that a warrant was required for the police to search a locked 200-pound footlocker over an hour after it was seized. *Id*. at 4–5, 15. In so holding, the Court rejected the argument that the police were authorized to conduct later in time any search they could have conducted at the time of the arrest. But *Chadwick* concerned a search incident to arrest of an item not on the arrestee's person but in the immediate control area surrounding an arrestee. *Id*. at 15. *Chadwick* held that a warrant is required for searches "remote in time or place from the arrest" and precluded the police from searching "luggage or other personal property *not immediately associated* with the person of the arrestee." *Id*. at 15 (emphasis added) (citation and internal quotation marks omitted).

*Chadwick* did not disturb the earlier rule that items immediately associated with the arrested person can be searched at any time—whether at the scene of the arrest or later at the station house. In fact, it recognized the key difference that justifies more extensive searches of items found on the person: "Unlike searches of the person, *United States v. Robinson*, 414 U.S. 218 (1973), *United States v. Edwards*, 415

U.S. 800 (1974), searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest." *Chadwick*, 433 U.S. at 16 n.10.

As explained above, the search of items found on the person of an arrestee does not require a warrant even if the search is not immediately after the arrest. *Edwards*, 415 U.S. at 803 (citing favorably the rule developed by courts of appeals that "both the person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place and if evidence of crime is discovered, it may be seized and admitted in evidence"). *Riley* may signal that we should revisit whether particularly private personal effects can be searched many hours after an arrest without a warrant, but as of 2009, the later search of the phone in Gary's pocket seized at the time of arrest was a lawful search of an arrestee's person and immediately associated property.

And even if what police behavior is permitted by *Robinson* and *Edwards* is ambiguous, there can be no doubt that a later search of an object in an arrestee's pocket was lawful in 2009 because of our decision in *United States v. Rodriguez*, 995 F.2d 776 (7th Cir. 1993). Rodriguez sought to exclude evidence the police obtained by photocopying an address book found in his wallet. *Id*. at 777–78. Rodriguez argued that the search was not a lawful search incident to his arrest because it was conducted at the sheriff's department rather than at the scene of the arrest. *Id*. The *Rodriguez* decision squarely rejected that distinction and upheld the search because of *Edwards*. *Id*.

Finally, Gary argues that there is no evidence in the record that the officer who conducted the search relied on *Ortiz* or was even aware of it. But the *Davis* good-faith exception applies if the officer's conduct is in *objectively* reasonable reliance on precedent: exclusion of the evidence is not appropriate if "the officers' conduct was in strict compliance with then-binding Circuit law and was not culpable in any way." *Davis*, 131 S. Ct. at 2428. Absent some showing of culpable misconduct, the officer's subjective motivations are not relevant to this inquiry. Objectively, the officer's search of the cell phone was lawful under then-binding precedent, so under *Davis* the district court did not err by denying the motion to suppress.

The judgment of the district court is AFFIRMED.