POSNER, Circuit Judge.
The defendants pleaded guilty to conspiring to possess and distribute cocaine, in violation of federal law, 21 U.S.C. §§ 846, 841(a), and were sentenced to 60 months (Rivera) and 48 months (Dueñas) in prison. But they reserved the right to appeal from the district judge’s denial of their motions to suppress evidence consisting of drugs that federal agents had seized in searches of Duenas’s garage and Rivera’s truck, which was in the garage. The agents didn’t have search warrants, and the defendants contend that the searches therefore violated the Fourth Amendment. Contrary to popular impression, the Fourth Amendment does not require a warrant to search or to arrest — ever; its only reference to warrants is a condemnation of general warrants. (The amendment reads in full: “The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”) The amendment has nevertheless been interpreted to require *341 warrants in many cases — but not, as we’ll see, in cases such as this.
A confidential informant (with the help of another man, whom we can ignore) arranged to purchase cocaine that was being sold at Duenas’s garage. Trailed by federal agents at a discreet distance, the informant drove to the garage, parked outside, entered (the garage door, open when he arrived, closed after he entered), and there discussed the transaction with Due-ñas and Rivera. He then left, ostensibly to get the money for the purchase of the cocaine from his car. Instead he 'got back into the car (which was parked nearby), drove a short distance, parked, and phoned one of the federal agents to report that there indeed was cocaine in the garage, in Rivera’s truck. Agents arrived shortly, arrested Dueñas outside the open garage and Rivera inside it, and then searched the garage and found and seized two kilograms of cocaine from Rivera’s truck. Between the confidential informant’s departure from the garage and the agents’ arrival, only about three minutes had elapsed.
The informant (of course not known to Dueñas and Rivera to be such) had entered the garage with the consent of Due-ñas, the owner of the garage, and of Rivera, the owner of the truck that contained the drugs to be sold to the informant. Although the informant had returned to his car and driven a short distance off, Dueñas and Rivera had remained, the garage door was now open, and it is a fair inference that they were expecting the informant to return soon with the money.
Obviously they had consented to the informant’s returning, and on -this basis the district judge invoked the curious, or at least curiously named, doctrine of “consent once removed.” If an informant is invited to a place by someone who has authority to invite him and who thus consents to his presence, and the informant while on the premises discovers probable cause, to make an arrest or search and immediately summons help from law enforcement officers,, the occupant of the place to which they are summoned is deemed to have consented to their presence. See United States v. Jachimko, 19 F.3d 296 (7th Cir.1994), and cases cited in it. On this basis the district' judge rejected the defendants’ Fourth Amendment claim.
At first glance the doctrine of “consent once removed” is absurd. If one thing is certain it’s that .Dueñas and Rivera would never have consented to the entry of federal drug agents into Duenas’s garage, where the drugs to be bought by the informant were stored. The doctrine thus, cannot, despite its name, be based on consent. This is well recognized. See, e.g., John F. Decker & Kathryn A. Idzik, “Disguising A New Exception to the Warrant Requirement: An Examination of the Consent-Once-Removed Doctrine and Its Hollow Justifications,” 61 Drake L.Rev. 127, 160-68 (2012);- Ben Sobczak, “The Sixth Circuit’s Doctrine of Consent Once Removed: Contraband, Informants and Fourth Amendment Reasonableness,” 54 Wayne L. Rev. 889, 902-08 (2008). As Sobczak points out, citing Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), if you invite someone to a party at your house he can’t, without your express or implied permission, bring others with him; that is, one can’t without permission extend an invitation that one has- received to other persons, especially ones unknown to the host. It’s thus difficult to understand what was intended by thé statement in United States v. Akinsanya, 53 F.3d 852, 856 (7th Cir.1995), that “when Akin-sanya gave his consent to Gilani to enter his apartment, he effectively gave consent *342 to the agents with-whom Gilani was working.”
But though misnamed, the doctrine has the following kernels of validity. First, an informant’s job, especially in cases such as this that come from the frequently violent world of drug trafficking, is often (though ■ not álways, even in the drug world, see, e.g., Richards v. Wisconsin, 520 U.S. 385, 393, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997); United States v. Williams, 604 F.2d 1102, 1122-23 (8th Cir.1979)), risky, and likewise that of a lone undercover officer. The informant in our case may well have feared that if he returned to the garage with the money for the drugs, Rivera and Dueñas would take the money but not give him the drugs and maybe would kill him ■ to' prevent his retaliating against them for stealing his money. (He would be likely to have fared no better with them had he returned to the garage without any money — how would he have explained that to them?) It was therefore reasonable for him to arrange with the agents that when he was about to return to the garage with the money he would call them and they would enter- the garage at ■ his • heels in order to protect him. United States v. Jachimlco, supra, and the cases cited in it, rightly emphasize -the lawful protective purpose of the misnamed “consent once removed” doctrine. See, e.g., United States v. Yoon, 398 F.3d 802, 809-10 (6th Cir.2005). And in this case obtaining a search warrant on the basis of what the informant saw in the garage would not have been practicable. The interval between the .informant’s notifying the agents that he had seen, drugs in the garage and the agents’ swooping down on: it and arresting its occupants was too short — about qne minute — for -the agents to have been able to obtain a warrant.
But one doesn’t need the opaque label “consent once removed” to justify authorizing such a response to an emergency situation. The doctrine of “exigent circumstances” (where “exigent” means emergency) allows such a response in this case because the interval between the informant’s notifying the agents of the presence of the cocaine in the garage, and the agents’ arrival at the scene was so short. They could have gotten a search warrant had they delayed their arrival — but by then Rivera and Dueñas, worried by the failure of the buyer (not known to them to actually be an informant) to show up with the money,- might have removed the cocaine from the truck and hid it elsewhere.
The agents upon arrival in the garage could have phoned for warrants, meanwhile ordering Rivera and Dueñas to remain in the garage. ■ But the order would have been a seizure within the meaning of the- Fourth Amendment — without a warrant.
We note parenthetically that consent to enter need not be invalid just because the person giving it lacks relevant knowledge of the person to whom he’s giving it. In United States v. White, 660 F.2d 1178 (7th Cir.1981), two undercover agents obtained consent to enter the defendant’s ’apartment by concealing their identities as police officers. That was “real” consent, though uninformed. One of the agents left after a while, ostensibly to get the money for a deal (like the informant in our case) — and instead returned with other agents. The court declined to consider their entry “a separate intrusion” given that one agent had remained inside throughout. Id. at 1183 n. 3. The defendant might have consented to the entry of ¡those other agents as well, had they concealed their identity as police officers. And had the informant in our case returned to the garage with a police officer disguised-as a drug dealer, and the informant had told Dueñas and Rivera that *343 the newcomer was an expert in assessing the quality of a cocaine sample, they (Due-ñas and Rivera) might have consented to his presence.
But there was no newcomer" invited or even permitted to join the party in this case. Nor was the informant, having driven away from the garage before the agents entered, and anyway not having returned, in danger from Rivera or Dueñas such as would have justified his summoning law enforcement for aid and protection — he was well out of harm’s way. This case seems therefore not to fit either of the rationales that we’ve identified as justifying the “consent once removed” doctrine. But the district judge had a third ground, of which more later in this opinion, for denying the defendants’ suppression motion — “inevitable discovery.” See, e.g., Nix v. Williams, 467. U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); United States v. Witzlib, 796 F.3d 799, 802-03 (7th Cir.2015); United States v. Tejada, 524 F.3d 809, 812-13 (7th Cir.2008). If officers search without a warrant, but it is certain they’d have obtained one had they applied for it, their omission is deemed harmless, and so is ignored.
We can’t find a case that mentions “consent once removed” in which the decision in favor of the government could not have been supported on another ground: United States v. White, supra, 660 F.2d at 1183 n. 3 (exigent circumstances); United States v. Janik, 723 F.2d 537, 547-48 (7th Cir.1983) (actual consent to entry); United States v. Diaz, 814 F.2d 454, 457-58 (7th Cir.1987) (inevitable discovery); United States v. Akinsanya, supra, 53 F.3d at 855-56 (same); United States v. Paul, 808 F.2d 645, 647-48 (7th Cir.1986) (same). In light of these decisions we are inclined to think that the term “consent once removed” is not only -opaque, but expendable.
. Once the confidential informant alerted the agents to-the fact that there was cocaine in Duenas’s garage, they had probable cause to search the garage. They could have obtained a search warrant by relaying what the informant had told them to whatever-magistrate was available to rule on a warrant application. But there was no time. The agents had to move fast because Rivera and Dueñas might panic when-they realized that the (unknown to them) informant might not be returning, and remove the drugs from the garage. The certainty (just as in United States v. Pelletier, 700 F.3d 1109, 1117 (7th Cir.2012) and many other cases) that the agents could- have gotten a warrant to conduct a search that would have revealed the drugs should alleviate concern with the warrantless search and arrests in this case. ' And if further' justification is required (it isn’t), there is the doctrine of harmless error, which usually refers to procedural errors in a trial but is applicable as well to searches and arrests. As explained in United States v. Stefonek, 179 F.3d 1030, 1035-36 (7th Cir.1999) (citations omitted), --
Concern with the frequent dispropor-tionality of the Sanction of exclusion has led judges to create exceptions to the exclusionary rule, itself a rule of federal common law (that is, of judge-made law) rather than a part of the Fourth Amendment itself and so amenable to judge-made adjustment_ [T]he exception that is most pertinent to this ease goes by the name.of “inevitable discovery” and refuses to suppress evidence seized in an unconstitutional search if it is shown that the evidence would ultimately have been seized legally if the constitutional violation had not occurred. • In other words, just as careless or even willful behavior is not actionable as a tort unless it causes injury, *344 so there must be a causal relation between the violation of the Fourth Amendment and the invasion of the defendant’s interests for him to be entitled to the remedy of exclusion. In a case of inevitable discovery, the defendant would by definition have been no better off had the violation of his constitutional rights not occurred, because the evidence would in that event have been obtained lawfully and used lawfully against him.... There is an exception for errors deemed to go to the very heart of due process, but we know that a violation of the Fourth Amendment is not such an error, because the Supreme Court greatly restricts its use as the basis for a collateral attack on a state conviction.... [A] Fourth Amendment violation committed before any litigation began, though not a harmless trial error, no more automatically invalidates the conviction than a harmless trial error would.
In sum, the search and arrests in this case invaded no lawful interest, no protected right of privacy of the defendants; a pause to enable warrants to be obtained would have risked the disappearance of the contraband; and an attempt to obtain warrants before the informant phoned in the information that he’d found the contraband might well have been denied for lack of proof of probable cause, thus distinguishing this case from cases such as United States v. Camou, 773 F.3d 932, 943 (9th Cir.2014), in which “police had probable cause but simply did not attempt to obtain a warrant.” The important point is that had time permitted, the agents would without question have obtained a warrant. See United States v. Pelletier, supra, 700 F.3d at 1117.
Because “the officers] who conducted the search complied with then-binding precedent, the evidence obtained from the search should not be excluded[,] because the search was conducted with the objectively reasonable good-faith belief that it was lawful.” United States v. Gary, 790 F.3d 704, 705 (7th Cir.2015). (The binding precedent — -actually precedents— in this case are the “consent once removed” cases — with which the agents faithfully complied.)
The clincher is our recent decision in United States v. Witzlib, supra, 796 F.3d at 802, which presented a parallel issue to this case, though it involved contraband explosives rather than contraband drugs. We offered “an alternative justification, besides consent and exigency, for the initial search (which happens also to have been the search that turned up by far the most important evidence of Witzlib’s guilt). Had the police sought a search warrant from the moment they finished talking to the uncle and aunt, it’s a certainty that it would have been issued — such was the probable cause created by what they told the police. So whether they got a warrant or not there was no way that Witzlib’s fireworks stash was going to remain undiscovered by the authorities” (citations omitted).
Similarly, had the agent in our case followed routine procedure — which as we said he would have done had he not been planning to rely on consent — a warrant would certainly have been issued on the basis of the informant’s knowledge: he had seen the cocaine stash in Rivera’s truck. So for Witzlib’s stash of explosives substitute our defendants’ cocaine stash and one sees that Witzlib governs this case. And Witzlib does not stand alone. For similar cases similarly decided see United States v. Pelletier, supra, 700 F.3d at 1117; United States v. Marrocco, 578 F.3d 627, 639-40 n. 21 (7th Cir.2009); United States v. Are, 590 F.3d 499, 507 (7th Cir.2009), If ever a warrantless search and seizure *345 were warranted, it was in this case. ■ It would be a miscarriage of justice to allow the defendants to go scot-free in so open and shut a case of criminal drug trafficking as this case is.
Affirmed