In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3068

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTWON D. JENKINS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:13-cr-30125-DRH-11 — **David R. Herndon**, *Judge.*

ARGUED SEPTEMBER 27, 2016 — DECIDED MARCH 13, 2017

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges*.

BAUER, *Circuit Judge.* A two-year investigation into a drug-trafficking operation commenced in Spring 2011, when the Drug Enforcement Administration received a tip that Tyrone Carraway was distributing narcotics in East St. Louis, Illinois. Agents enlisted a confidential source to make controlled purchases of crack cocaine from Cortez Yarbrough, one of

Carraway's distributors. In December 2011, DEA agents received authorization to wiretap Carraway's phone. They learned from the wiretapped conversations that Carraway was obtaining cocaine from a barbershop in St. Louis, Missouri, operated by one Ernest Lyons; Richard Graham, Carraway's cousin, acted as an intermediary between Carraway and Lyons. Carraway distributed cocaine from his father's tire shop in East St. Louis, Illinois, referred to as "the Gate."

On January 14, 2012, intercepted calls from Carraway's phone revealed that he and Graham were going to retrieve narcotics from Lyons' barbershop; surveillance teams near the barbershop observed Carraway and Graham enter the barbershop and exit a short time later. Next, Carraway's vehicle headed toward the Gate in East St. Louis. During this trip, a surveillance team intercepted three calls between Carraway and Jenkins, using the phone number (618) XXX-4062.

During the first call, using coded language, Carraway told Jenkins that cocaine had arrived and that he would save some for him. In the second call, Carraway told Jenkins that he was in East St. Louis; Jenkins responded that he would meet Carraway in fifteen minutes. The last call was made as surveillance teams were monitoring the Gate. Jenkins told Carraway that he was "finna pull up." A short time later, a black GMC Yukon with an Illinois temporary license plate number 244N250 pulled onto the lot. The car was registered to a Devontae Jenkins. Agents were unable to confirm who was driving the Yukon or observe what transpired inside the Gate because it was dark outside. The Yukon left after approximately five minutes.

On January 28, 2012, agents intercepted phone calls between Carraway and Graham indicating that they planned to make another trip to the barbershop for cocaine. Surveillance teams at the barbershop observed Carraway and Graham arrive. The two went inside and stayed for about twenty minutes. Afterward, they ate at a nearby diner. While they were at the diner, agents intercepted a call between Jenkins and Carraway. Carraway told Jenkins that he would be heading to East St. Louis soon, and that he would call Jenkins when he was on his way so that they could meet.

Surveillance teams followed Carraway and Graham to the Gate. Suspecting that Carraway would be distributing narcotics from the Gate, Special Agent Matthew McKnight contacted Jarrod Leckrone, an Illinois State Trooper, and instructed him to make a traffic stop near the Gate at the agent's direction. While monitoring the Gate, agents intercepted another call between Carraway and Jenkins; Carraway told Jenkins that he could "come on this way." A short time thereafter, agents observed the same Yukon from their January 14, 2012, surveillance arrive at the Gate. The Yukon left about five minutes later. Agents provided Leckrone with a description of the Yukon and its direction of travel. Leckrone noted that the vehicle had illegally tinted windows, the temporary registration was obscured, and the driver was not wearing a seat belt. He pulled the Yukon over eight blocks from the Gate.

Leckrone advised Jenkins, the driver of the vehicle, why he had been stopped. Jenkins admitted that he had not been wearing a seat belt. Leckrone observed that Jenkins acted nervous and excited; he also noticed an odor of burnt cannabis

emanating from the vehicle. Leckrone asked Jenkins if he had any cannabis or other contraband in the car; Jenkins said no. At this point, an assisting officer arrived and Leckrone asked Jenkins to exit his vehicle so that it could be searched. Jenkins stood at the front of Leckrone's squad car during the search.[1] Leckrone searched the area of the dashboard and center console and found a plastic panel, behind which was a cellophane bag containing cocaine. He also found three cell phones which were "ringing one after another." The phones were seized as part of the search.

Leckrone transported Jenkins to the Illinois State Police headquarters in Collinsville, Illinois. McKnight also went to the headquarters, at which time Leckrone gave him the cocaine and cellular phones. McKnight searched the settings on one of the phones; he determined that its number was (618) XXX-4062, the same number from which agents had intercepted calls on January 14 and 28, 2012. Moreover, the call log showed recent calls to Carraway and Yarbrough. Leckrone read Jenkins his *Miranda* rights. Jenkins stated that the truck belonged to his cousin, and that he did not know anything about the cocaine recovered during the search. He refused to provide any further information.

---

[1] In Jenkins' opening brief, he alleges that at the time the search was executed he had already been placed in Leckrone's squad car. However, Jenkins cannot marshal any evidence to support this claim, and it is belied by the record. Jenkins appears to abandon this factual dispute in his reply brief. Therefore, we will disregard Jenkins' factual challenge and view the facts in accordance with the trial testimony.

On June 18, 2013, a grand jury charged Jenkins with conspiracy to distribute, and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846, and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Jenkins filed a motion to suppress evidence to exclude: the cocaine found in his car, evidence from the search of his phone, and any statements that he made.

On June 30, 2014, the district court denied in part and granted in part the motion to suppress. The court denied the motion as to the search of Jenkins' vehicle and subsequent statements made by Jenkins. The court found that the vehicle search was invalid under the search incident to arrest exception, but permissible under the collective knowledge doctrine. The court found that the evidence was admissible because Leckrone had established independent probable cause, and normal police investigation would have inevitably led to the discovery of the evidence. The court granted the motion to suppress the results of the cell phone search, relying on *Riley v. California*, 134 S. Ct. 2473, 2493 (2014), which held that a warrant must generally be obtained prior to searching an arrestee's cell phone data.

The Government filed a motion to reconsider the motion to suppress. It argued that the evidence obtained from the cell phone search should be admitted, based on *United States v. Flores-Lopez*, 670 F.3d 803 (7th Cir. 2012), which held that searching a cell phone found on an arrestee's person to identify its telephone number was a valid warrantless search incident

to arrest. 670 F.3d at 809–10. The court granted the Government's motion and permitted use of the cell phone evidence.

A three-day jury trial concluded on March 18, 2015, and Jenkins was found guilty of possession with intent to distribute cocaine. The court declared a mistrial on the conspiracy count and dismissed it.

The United States Probation Office prepared Jenkins' Presentence Investigation Report, which concluded that Jenkins' Sentencing Guidelines range was 27-33 months' imprisonment. The PSR noted that Jenkins' sentence could run concurrently, partially concurrently, or consecutively to his 308-month term of imprisonment on an unrelated conviction for kidnaping and using or carrying a firearm to commit a federal crime of violence. At sentencing, the court adopted the PSR as its own factual findings. The court sentenced Jenkins to 27 months' imprisonment, and a term of 3 years' supervised release. The court ordered Jenkins' sentence to run consecutive to his sentence for kidnaping and using or carrying a firearm.[2] This timely appeal followed.

On appeal, Jenkins challenges the district court's denial of his motion to suppress, as well as the imposition of a consecu-

---

[2]   During the pendency of this appeal, Jenkins' conviction for using or carrying a firearm to commit a federal crime of violence was reversed by this Court. *See United States v. Jenkins*, No. 14-2898, 2017 WL 727154, *5, --- F.3d---- (7th Cir. Feb. 24, 2017). Jenkins was sentenced to 120 months for using or carrying a firearm, to run consecutively to a 188-month sentence for kidnaping. The case has been remanded for further proceedings.

tive rather than concurrent sentence. We address each of these arguments in turn.

### I. Motion to Suppress

### A. Constitutionality of Warrantless Cell Phone Search

Jenkins argues that the evidence derived from his cell phone should have been suppressed. "When reviewing a district court's decision on a motion to suppress, we review findings of fact for clear error and conclusions of law *de novo*." *United States v. Guidry*, 817 F.3d 997, 1005 (7th Cir. 2016) (citation omitted).

"Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing … reasonableness generally requires the obtaining of a judicial warrant … ." *Veronia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995) (citation omitted). Thus, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One exception to the warrant requirement is for a search incident to a lawful arrest. *See Chimel v. California*, 395 U.S. 752 (1969). The justification for this exception is the protection of the arresting officer and the preservation of evidence. *Id.* at 762–63.

In *Riley*, the Supreme Court grappled with how the search incident to arrest doctrine applies to modern cell phones. The Court declined to extend the categorical rule for searches incident to arrest to searches of data on cell phones. *Riley*,

134 S. Ct. at 2495. The Court unequivocally held: "Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Id*. The Court noted that "other case-specific exceptions may still justify a warrantless search of a particular phone[,]" such as the exigent circumstances exception. *Id*. at 2494. However, such exigencies, including the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury, are not at issue here. *See id.*

Though the search took place before *Riley* was decided, we apply the new constitutional rule announced in *Riley* because this is the direct appeal of a criminal conviction. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). The Government concedes that the warrantless search of Jenkins' cell phone was unlawful in light of *Riley*. However, this finding is not the end of the inquiry.

The Supreme Court has held that unlawfully obtained evidence should not be suppressed "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." *Davis v. United States*, 564 U.S. 229, 238 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). The Court instructed that "[p]olice practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningful' deterrence, and culpable enough to be 'worth the price paid by the justice system.'" *Id*. at 240 (alteration omitted) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). *Davis* held that when "binding appellate precedent

specifically *authorizes* a particular police practice," officers should be able to employ such a practice without facing later suppression of evidence if that precedent is later overruled by the Supreme Court. *Id*. at 241.

Here, the Government argued before the district court that our decision in *Flores-Lopez* specifically authorized the search of Jenkins' cell phone, and thus Agent McKnight reasonably relied on binding appellate precedent in conducting the search. The district court agreed, and thus declined to suppress the evidence. The Government was correct that *Flores-Lopez* authorized the warrantless search of a cell phone seized incident to arrest until *Riley* upended it. However, because *Flores-Lopez* was decided after Jenkins' cell phone was searched, Agent McKnight could not have reasonably relied upon it in conducting the search.

Undeterred, the Government argues that *United States v. Gary*, 790 F.3d 704 (7th Cir. 2015), and the cases cited therein, demonstrate that at the time of the search in this case, binding precedent permitted the search of cell phones seized incident to arrest. In *Gary*, police officers pulled over a vehicle in which the defendant was a passenger as part of an undercover drug operation. 790 F.3d at 706. Officers recovered two cell phones from the defendant's pockets that were seized incident to his arrest. *Id*. Officers transported defendant to the police station where he spoke with his parole officer. *Id*. At the station, his cell phones were placed on a table. *Id*. at 708. Later, a detective searched the phones, finding that the number of one of the phones matched the number that an undercover officer had called to set up the drug transaction. *Id*. The detective checked

the call log of the cell phone and verified that it had received calls from the officer's phone. *Id*.

The defendant, relying on *Riley*, argued that the warrantless search of the cell phones violated his Fourth Amendment rights and that the evidence adduced from the cell phone search should be suppressed. *Id*. *Gary* found that a Fourth Amendment violation had occurred, but it refused to apply the exclusionary rule because the officer had reasonably relied on binding appellate precedent in effect in 2009 when the search was conducted. *Id*.

*Gary* noted that in 2009, prior to *Riley*, the Supreme Court had recognized a categorical rule that permitted the police to conduct a search of a person incident to a lawful arrest. *Id*. at 709. *Gary* relied in part on *United States v. Edwards*, 415 U.S. 800, 805 (1974), which upheld the search of an arrestee's clothes taken from him while he was in custody and the seizure of incriminating evidence that was found.

Furthermore, *Gary* found the facts of *United States v. Ortiz*, 84 F.3d 977 (7th Cir. 1996), "remarkably similar" and its holding persuasive. 790 F.3d at 710. In *Ortiz*, federal agents, acting on the tip of a cooperating codefendant, contacted the pager number of the defendant. 84 F.3d at 982. At the agents' request, the codefendant arranged a meeting with the defendant to obtain heroin. *Id*. When the defendant arrived, police officers arrested him. *Id*. Officers seized an electronic pager found on the defendant during a search. *Id*. While still at the scene of the arrest, officers retrieved its numeric messages to confirm that it was the same pager that agents had called earlier that day. *Id*. at 983. The defendant filed a motion to

suppress evidence from the search of his pager. *Id.* at 984. *Ortiz* affirmed the denial of the defendant's motion to suppress, finding that "the information from the pager was admissible because the officers conducted the search of its contents incident to the arrest." *Id.*

*Gary* held that "the force of *Ortiz* was strong enough" to authorize the warrantless search of a cell phone in *Flores-Lopez*. 790 F.3d at 710. *Gary* continued that it was objectively reasonable for the officers to rely on *Ortiz* as binding precedent when conducting the search. *Id.* at 710–11. Therefore, the Government concludes that Agent McKnight could rely on *Ortiz* and *Gary* as binding appellate precedent to search Jenkins' cell phones incident to his arrest. The Government recognizes that *Gary* was decided in 2015, after the search of Jenkins' cell phone transpired. However, it argues that *Gary* establishes that prior to *Riley*'s announcement in 2014, the binding appellate precedent in this circuit permitted the warrantless search of Jenkins' cell phone.

Jenkins argues that *Gary* and *Ortiz* are distinguishable because in those cases, the cell phones and pager were found on the arrestee's person rather than in a vehicle. Jenkins relies on *United States v. Chadwick*, 433 U.S. 1 (1977), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). In *Chadwick*, police conducted a warrantless search of a footlocker found in the arrestee's trunk over an hour after his arrest. 433 U.S. at 4. *Chadwick* held that a warrant is required for searches "remote in time or place from the arrest" and precluded the police from searching "luggage or other personal property not immediately associated with the person of the arrestee[.]" *Id.*

at 15 (citation and internal quotation marks omitted). The Court found that "[u]nlike searches of the person … searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest." *Id*. at 16 n.10. Both *Gary* and *Ortiz* acknowledged the holding from *Chadwick*, and are properly understood to address the search of an arrestee's person rather than his vehicle. *See Gary*, 790 F.3d at 710–11; *Ortiz*, 84 F.3d at 984.

In response, the Government argues that it is "immaterial" that Jenkins' cell phones were found in his vehicle as opposed to on his person. The Government cites *Gant*, which expounds upon the search incident to arrest doctrine. In *Gant*, the Court held that the search of a vehicle's compartments and any containers therein is justified as a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004)).[3]

But *Gant* specifically cabined its holding to instances in which "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id*. This limitation "ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arrest-

---

[3]    The Government argues that a cell phone fits into the definition of "container" as the term is used in *Gant* because a cell phone "contains data." We recognize that *Flores-Lopez* found that this was a plausible interpretation of the word container. *See* 670 F.3d at 805. But again, *Flores-Lopez* had not been decided at the time of the search in this case. Therefore, the Government may not rely upon it as binding appellate precedent. In any event, the Supreme Court rejected this argument in *Riley*. 134 S. Ct. at 2491.

ing officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Id*. at 339. While we recognize that Jenkins was not handcuffed or secured inside Leckrone's squad car at the time the search was executed, he was at the front of the squad car and in the company of another officer. Therefore, it seems implausible, and the Government does not argue, that he was within reaching distance of the center console. As a result, the safety and evidentiary concerns that undergird the reaching-distance rule are not present here.

We do not believe that *Gary*, *Ortiz*, or *Gant* "specifically authorize[d]" the search of Jenkins' cell phones. *See Davis*, 564 U.S. at 241. The Government is essentially requesting that we extend the applicability of *Ortiz* from the search of an arrestee's person to the search of the arrestee's vehicle and electronic devices found therein; or conversely, that we ignore the limiting principle in *Gant* to permit the search of a compartment and its objects even when a defendant is not in reaching distance. But *Davis* requires a more exacting analysis. As we have recognized, "[t]he *Davis* exception for good faith reliance on controlling precedent does not reach so far as to excuse mistaken efforts to *extend* controlling precedents." *United States v. Rivera*, 817 F.3d 339, 346 (7th Cir. 2016) (Hamilton, J. concurring in part and concurring in the judgments).

We conclude that McKnight's search of Jenkins' cell phone was not objectively reasonable, and therefore the *Davis* exception does not apply.

**B. Harmless Error**

When the Government seeks to introduce evidence that is the fruit of an unconstitutional search, the traditional remedy is exclusion. However, constitutional error that is harmless will not cause an otherwise valid conviction to be set aside. *Mendoza v. United States*, 755 F.3d 821, 829–30 (7th Cir. 2014) (citations omitted). The court must ask: "[i]s it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" *Kamlager v. Pollard*, 715 F.3d 1010, 1016 (7th Cir. 2013) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

Jenkins argues that without McKnight's cell phone search, the Government could not prove that he was using the (618) XXX-4062 number to arrange the drug transactions. He contends that the information obtained through McKnight's search was necessary to his conviction. We disagree. Even if the evidence from Jenkins' cell phone had been suppressed, the jury heard ample evidence demonstrating Jenkins' guilt. Specifically, it heard the three phone calls between Carraway's phone and (618) XXX-4062 on January 14, 2012, revealing that a drug transaction was to take place at the Gate. The jury was presented with details of the agents' surveillance of the Gate—that a male using the (618) XXX-4062 number called Carraway to tell him that he was about to arrive, and that a black GMC Yukon registered to Devontae Jenkins arrived and left five minutes later.

Further, the jury heard the details of the drug transaction on January 28, 2012, including another call between Carraway and (618) XXX-4062 to arrange the transaction at the Gate. The

jury also heard that agents observed the same black GMC Yukon arrive at the Gate, and leave shortly thereafter. The jury heard that from there, Leckrone pulled over the Yukon's driver and sole occupant, Jenkins, who had over 81 grams of cocaine in his possession. The jury heard the additional details of the traffic stop. In addition, the jury heard testimony from Carraway identifying Jenkins as the individual that he spoke and messaged with at the (618) XXX-4062 number on January 14 and 28, 2012. Carraway also confirmed that he sold Jenkins drugs two or three times beginning in Winter 2011 and into 2012.

Moreover, in our view, the surveillance evidence, in conjunction with Carraway's testimony, provided the jury with substantial evidence tying Jenkins to the cell phone. Jenkins counters that Carraway's testimony should not be given weight because he had credibility issues resulting from the fact that he was testifying in exchange for a reduced sentence. Jenkins assumes the jury would not have given weight to his testimony because he was "untrustworthy." The Government routinely puts on witnesses at trial who are testifying in exchange for reduced sentences. If the jury has been properly instructed—that they should consider such testimony with caution and great care—the testimony is just something else for the jury to consider.

We find that the testimony of Carraway, along with the other witnesses and corroborating evidence, overwhelmingly demonstrates Jenkins' guilt beyond a reasonable doubt and renders the jury's exposure to the cell phone search harmless. Accordingly, we will not reverse Jenkins' conviction.

## II.  Sentencing Error

Next, Jenkins argues that the district court erred in impos-ing a sentence consecutive to rather than concurrent with his sentence for kidnaping. Specifically, Jenkins argues that the court improperly relied on conduct related to the conspiracy charge, for which the court declared a mistrial, as a basis for imposing a consecutive rather than concurrent sentence. We review Jenkins' criminal sentence in two steps: first for procedural error, then for substantive reasonableness. *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Because Jenkins did not object to the alleged error at the sentencing hearing, plain error is the standard of review. *United States v. Chatman*, 805 F.3d 840, 843 (7th Cir. 2015). To demonstrate plain error, a defendant must establish that (1) there was in fact an error; (2) the error was plain; (3) the error affected the defendant's "substantial rights"; and (4) "the court 'should exercise its discretion to correct the error because it seriously affected the fairness, integrity, or public reputation of the judicial proceedings.'" *Id.* at 843–44 (quoting *United States v. Durham*, 645 F.3d 883, 890 (7th Cir. 2011)).

Jenkins' argument fails upon consideration of the first factor. At the sentencing hearing, the district court judge adopted the facts as set forth in the PSR. The district court judge noted that Jenkins' case involved "a very large conspir-acy," but that Jenkins was not heavily involved. He also found that there was sufficient evidence to convict on the conspiracy count, but never stated that he was sentencing Jenkins on the basis of the conspiracy count. In fact, he observed that there

was ample, credible evidence to support Jenkins' conviction for possession with intent to distribute cocaine.

Jenkins argues that the district court judge's comments about the conspiracy imply that he impermissibly considered the conspiracy count when fashioning his sentence. First, this is a misreading of the district court judge's comments. While he believed there was sufficient evidence to sustain the conspiracy count, it is clear that he relied on the possession count, which he appropriately described as a "significant crime," as the basis for his sentence. The comments simply do not convey that the court actually relied on the conspiracy charge in determining Jenkins' sentence. Further, the court made it clear that it was imposing a consecutive sentence as a result of Jenkins' criminal history, the seriousness of the offense, and the need for just punishment, not on the basis of any conspiracy-related conduct.

However, we note that "a wide range of conduct is relevant at sentencing—including uncharged conduct and charges of which the defendant was acquitted—so long as that conduct is established by a preponderance of the evidence." *United States v. Heckel*, 570 F.3d 791, 797 (7th Cir. 2009) (citing *United States v. Watts*, 519 U.S. 148 (1997)); *see also* 18 U.S.C. § 3661; U.S.S.G. § 1B1.4. The district court judge found that the Government's evidence was credible and largely uncontested. We agree. For his part, Jenkins does not seriously dispute the accuracy of any information in the PSR or evidence adduced at trial. Therefore, even if the district court judge had considered evidence related to the conspiracy charge, he would have been entitled to do so. Accordingly, Jenkins' procedural challenge fails.

Having concluded the district court followed sound procedure, we will now determine whether that procedure led to its intended outcome: substantively reasonable punishment. We conduct this review for abuse of discretion. Because Jenkins' Guidelines range was correctly calculated and the district court sentenced him within that range, the sentence is presumed reasonable on appeal. *Rita v. United States*, 551 U.S. 338, 347 (2007).

"We will uphold [a] sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." *United States v. Abebe*, 651 F.3d 653, 657 (7th Cir. 2011) (citation and quotation marks omitted). "Although the district judge is not required to make factual findings as to each of the [§ 3553(a)] factors, the record on appeal should reveal that the district judge considered the factors." *United States v. Collins*, 640 F.3d 265, 270 (7th Cir. 2011) (citation omitted). "It is simply not required that the sentencing judge tick off every possible sentencing factor or detail and discuss, separately, every nuance of every argument raised for this court to find that the sentence was proper*." Id*. at 271.

As discussed above, the court clearly identified the § 3553(a) factors that it believed warranted the imposition of a consecutive sentence: Jenkins' "substantial" criminal history; the seriousness of the offense; the need for just punishment; and to promote respect for the law. The court remarked that Jenkins "thumbs his nose at the rules" and believes that "the rules and laws don't apply to him." As a result, the court believed that a consecutive rather than concurrent sentence

was most appropriate. We have held that "undoubtedly a sentencing court enjoys broad discretion in deciding whether to run concurrent or consecutive terms." *United States v. Bour*, 804 F.3d 880, 885 (7th Cir. 2015) (citation and quotation marks omitted). We do not find Jenkins' sentence to be an abuse of that broad discretion. Consequently, Jenkins' sentence is substantively reasonable.

For the foregoing reasons, we AFFIRM Jenkins' conviction and sentence.